UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

PUBLIC INTEREST LEGAL FOUNDATION,

          Plaintiff,

v.

JANICE M. WINFREY, in her official capacity as
Detroit City Clerk, and GEORGE AZZOUZ, in his
official capacity as Director of Elections for the City
of Detroit,

          Defendants,

Case No. 19-13638
Hon. David M. Lawson
Mag. Judge Michael J. Hluchaniuk

## MOTION TO INTERVENE BY NON-PARTIES LEAGUE OF WOMEN VOTERS OF MICHIGAN AND LEAGUE OF WOMEN VOTERS OF DETROIT AND BRIEF IN SUPPORT

## THE LEAGUE'S MOTION TO INTERVENE

The League of Women Voters of Michigan and League of Women Voters of Detroit (the "League"), by and through the undersigned counsel, respectfully request that they be permitted to intervene as defendants in this action pursuant to Federal Rule of Civil Procedure 24.  The League seeks to intervene as of right under Federal Rule of Civil Procedure 24(a) or, in the alternative, permissively under Federal Rule of Civil Procedure 24(b).

In support of this Motion, the League submits the accompanying Brief in Support.

In accordance with LR 7.1(a), the League's counsel contacted counsel for the parties to seek their consent on this motion to intervene.  Counsel for Defendants responded that Defendants have no objection to this motion.  Counsel for Plaintiff responded that Plaintiff objects to this motion.

WHEREFORE, the League respectfully requests that the Court grant this Motion and allow the League to intervene as defendants in this matter.

Dated: February 10, 2020

Respectfully submitted,

BRENNAN CENTER FOR JUSTICE AT NYU
SCHOOL OF LAW

Myrna Pérez (N.Y. Bar No. 4874095)*
Eliza Sweren-Becker (N.Y. Bar No. 5424403)*
120 Broadway, Suite 1750
New York, NY 10271
Telephone: 646.292.8310
Facsimile: 212.463.7308
myrna.perez@nyu.edu
eliza.sweren-becker@nyu.edu


PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

/s/ Robert A. Atkins
Robert A. Atkins (N.Y. Bar No. 2210771)
William B. Michael (N.Y. Bar No. 4296356)
Joshua D. Kaye (N.Y. Bar No. 4577219)
Sabrina A. Baum (N.Y. Bar No. 5496237)*
Zack G. Goldberg (N.Y. Bar No. 5579644)*
Adrienne Y. Lee (N.Y. Bar. No. 5643283)*
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: 212.373.3000
Facsimile: 212.757.3990
ratkins@paulweiss.com
wmichael@paulweiss.com
jkaye@paulweiss.com
sbaum@paulweiss.com
zgoldberg@paulweiss.com
alee@paulweiss.com


BUTZEL LONG

/s/ David F. DuMouchel
David F. DuMouchel (P25658)
George B. Donnini (P66793)
41000 Woodward Avenue

3

Stoneridge West
Bloomfield Hills, MI  48304
Telephone:      (313) 225-7004
dumouchd@butzel.com
donnini@butzel.com

*Attorneys for Proposed
Intervenor-Defendants*

*\*Application for admission forthcoming*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

PUBLIC INTEREST LEGAL FOUNDATION,

        Plaintiff,

v.

JANICE M. WINFREY, in her official capacity as
Detroit City Clerk, and GEORGE AZZOUZ, in his
official capacity as Director of Elections for the City
of Detroit,

        Defendants,

Case No. 19-13638
Hon. David M. Lawson
Mag. Judge Michael J. Hluchaniuk

## THE LEAGUE'S BRIEF IN SUPPORT OF MOTION TO INTERVENE

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 5

ARGUMENT ........................................................................................................ 7

I.      THE COURT SHOULD GRANT INTERVENTION AS OF RIGHT
UNDER RULE 24(A)................................................................................ 7

      A.      The Intervening Parties' Motion is Timely............................... 8

      B.      The League Has a Substantial Legal Interest in the Case .................... 10

      C.      The League's Ability to Protect Its Interests Will Be Impaired
Absent Intervention.............................................................. 12

      D.      The City Inadequately Represents the Intervening Parties' Interest.................... 15

II.     IN THE ALTERNATIVE, THE COURT SHOULD GRANT
PERMISSIVE INTERVENTION UNDER RULE 24(B) ................................. 17

# <u>INDEX OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Anderson* v. *Celebrezze*,
    460 U.S. 780 (1983) ........................................................................................................11

*Bellitto* v. *Snipes*,
    No. 16-CV-61474-BLOOM/Valle, 2016 WL 511856 (S.D. Fla. Sept. 21,
    2016) ....................................................................................................................4, 11

*Bradley* v. *Milliken*,
    828 F.2d 1186 (6th Cir. 1987) ...........................................................................................10

*Burdick* v. *Takushi*,
    504 U.S. 428 (1992) ...........................................................................................................10

*City of St. Louis* v. *Velsicol Chem. Corp.*,
    708 F. Supp. 2d 632 (E.D. Mich. 2010) ..............................................................................8

*Coal. to Defend Affirmative Action, Integration & Immigration Rights & Fight for
    Equal. by any Means Necessary* v. *Granholm*,
    240 F.R.D. 368 (E.D. Mich. 2006) ....................................................................................12

*Grutter* v. *Bollinger*,
    188 F.3d 394 (6th Cir. 1999) .......................................................................................10, 16

*Hill* v. *Travelers Cas. & Sur. Co.*,
    No. 14-12840, 2015 WL 3440871 (E.D. Mich. May 28, 2015) ......................................9, 10

*Jansen* v. *City of Cincinnati*,
    904 F.2d 336 (6th Cir. 1990) ..............................................................................................8

*Kirsch* v. *Dean*,
    733 Fed. App'x 268 (6th Cir. 2018) ...................................................................................8

*Kobach* v. *U.S. Election Assistance Comm'n*,
    No. 13-CV-4095-EFM-DJW, 2013 WL 6511874 (D. Kan. Dec. 12, 2013) .....5, 11, 14, 16, 19

*Konica Mintolta Bus. Solutions U.S.A., Inc.* v. *Lowery Corp.*,
    No. 15-11254, 2018 WL 2225360 (E.D. Mich. Apr. 23, 2018) ...........................................9

*League of United Latin Am. Citizens* v. *Pub. Interest Legal Found.*,
    No. 1:18-CV-00423, 2018 WL 3848404 (E.D. Va. Aug. 13, 2018) .....................................13

*League of Women Voters of Michigan* v. *Benson*,
    2:17-CV-14148, 2017 WL 11113484 (E.D. Mich. Dec. 22, 2017) ..........................................6

*League of Women Voters of Michigan* v. *Johnson*,
    902 F.3d 572 (6th Cir. 2018) ........................................................................17, 18

*League of Women Voters of Ohio* v. *Blackwell*,
    235 F.R.D. 388 (N.D. Ohio 2005) ...............................................................17

*League of Women Voters of the United States* v. *Newby*,
    195 F. Supp. 3d 80 (D.D.C. 2016) ..............................................................5, 12

*United States* v. *Marsten Apartments, Inc.*,
    175 F.R.D. 265 (E.D. Mich. 1997) ...............................................................8

*Meyer Goldberg, Inc. of Lorain* v. *Goldberg*,
    717 F.2d 290 (6th Cir. 1983) .......................................................................17

*Mich. State AFL-CIO* v. *Miller*,
    103 F.3d 1240 (6th Cir. 1997) ..............................................................7, 10, 12, 16

*United States* v. *Michigan*,
    424 F.3d 438 (6th Cir. 2005) .......................................................................17

*Pride* v. *Allstate Ins. Co.*,
    No. 10-13988, 2011 WL 692299 (E.D. Mich. Feb. 18, 2011)..........................................9, 10

*Purnell* v. *City of Akron*,
    925 F.2d 941 (6th Cir. 1991) .......................................................................10

**STATUTES**

52 U.S.C. 20507(a)(4)...............................................................................1, 4, 15

Mich. Comp. Laws § 168.510.........................................................................4

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 24 ..................................................................1

Federal Rule of Civil Procedure 24(a) ...............................................1, 7, 12, 17, 19

Federal Rule of Civil Procedure 24(b).................................................1, 7, 17, 19

Local Rule 7.1 .......................................................................................1

*LULAC* v. *Public Interest Legal Foundation*,
    https:// protectdemocracy.org/project/lulac-v-public-interest-legal-foundation/
    (last visited Feb. 5, 2020).........................................................................13

iii

Minute Order, *Newby*, No. 1:16-cv-00236 2016 WL 11572484 (D.D.C. Feb. 20, 2016) ................................................................................................................13

Mot. to Intervene, *Newby*, No. 1:16-cv-00236, 2016 WL 11572484 (D.D.C. Feb. 20, 2016) ..........................................................................................................13, 18

PILF, *244 Counties Have More Registered Voters than Live Adults* (Aug. 29, 2019), https://publicinterestlegal.org/blog/244-counties-have-more-registered-voters-than-live-adults/ ............................................................................................3, 15

PILF, *248 Counties Have More Registered Voters than Live Adults* (Sept. 25, 2017), https://publicinterestlegal.org/blog/248-counties-registered-voters-live-adults/.........................................................................................................................3

PILF, *Counties With More Registered Voters in the 2016 Election than Adults of Voting Age*, https://publicinterestlegal.org/county-list-2017/ (last visited Feb. 10, 2020) ...........................................................................................................3

PILF, *Sample Notice Letter* (Sept. 15, 2017) https://publicinterestlegal.org/files/Sample-2017-notice.pdf ...................................3

PILF Deposition Exhibit JJ, https://protectdemocracy.org/resource-library/document/lulac-v-publicinterest-legal-foundation-exhibit-jj-2/ ................................13

United States Census, *QuickFacts: Detroit City, Michigan; Michigan*, https://www.census.gov/ .........................................................................................14

The League of Women Voters of Michigan and League of Women Voters of Detroit (the "League"), by and through the undersigned counsel, respectfully request that they be permitted to intervene as defendants in this action pursuant to Federal Rule of Civil Procedure 24.  The League seeks to intervene as of right under Federal Rule of Civil Procedure 24(a) or, in the alternative, permissively under Federal Rule of Civil Procedure 24(b).

In accordance with LR 7.1(a), the League's counsel contacted counsel for the parties to seek their consent on this motion to intervene.  Counsel for Defendants responded that Defendants have no objection to this motion.  Counsel for Plaintiff responded that Plaintiff objects to this motion.

## **INTRODUCTION**

This is a case about the right to register and vote, a matter central to the League's purpose, mission, and voter registration activities.  The League, a nonprofit, community-based group, has spent the last century promoting and protecting that right by educating, assisting, and registering voters in Detroit and throughout Michigan.  That mission would be directly and negatively impacted were Plaintiff Public Interest Legal Foundation ("PILF" or the "Foundation") successful in compelling Detroit to rely on unvetted data from a nongovernmental third-party to purge voters in a manner far beyond what federal law requires.

The National Voter Registration Act ("NVRA") -- a law intended to "increase the number of eligible citizens who register to vote" and to "protect the integrity of the electoral process" -- requires "a *reasonable* effort to remove the names of ineligible voters." 52 U.S.C. 20507(a)(4) (emphasis added).  The law does not require that election administrators accept (or divert scarce resources into fact-checking) unsubstantiated and unsolicited data presented by third parties.  However, if PILF were to succeed in forcing election administrators into this type of aggressive and indiscriminate purge, it would affect both eligible and ineligible voters and

would require the League to commit further time, resources, and personnel to ensuring that every resident entitled to vote is given the opportunity to cast their ballot in this year's historic elections, and in elections to come.  Plaintiff would, for example, have Detroit delete voters with similar names, on the unsubstantiated assumption that they are the same person.  (*See* Compl. ¶ 27.)  Plaintiff also would have the City delete living but purportedly "deceased" voters based on registration records containing typos, like an 1823 birth date -- a date which would, were it not an obvious clerical error, make the voter nearly 200 years old.  (*See id.*)  If PILF succeeds in these efforts, there is no doubt that the League will be forced to undertake additional efforts to assist and re-register voters purged from the rolls, and to educate voters about checking (and re-checking) their registration status to ensure that they are not collateral consequences of the unreasonable purges for which PILF advocates.

The Court should allow intervention for the League to defend its interests against such real and imminent harm.  This lawsuit strikes at the heart of the League's mission to promote active participation in government through voting.  In particular, PILF's attempt to force the City into accepting unsubstantiated data and adopting unreasonable purge practices beyond the requirements of federal law -- and the *in terrorem* effect such litigation may have on other election officials elsewhere in the State -- threatens to impair the League's substantial legal interest in ensuring that every registered, eligible voter in Detroit (and statewide) remains registered and able to exercise his or her constitutional right to vote.  At a minimum, the League would be required to expend its limited resources on new education, registration (or re-registration), and election protection efforts to respond to such a purge in order to try to prevent or mitigate the very real risk that Detroit citizens, including members of the League, will be disenfranchised.  Satisfying PILF's demand would result in deregistration of eligible voters and

substantially interfere with the League's goal of encouraging voting and other forms of civic participation, especially among minorities and other traditionally disenfranchised communities which the League targets in its extensive voter education and voter registration drives.  These additional burdens would strain the League's limited resources because purged eligible voters will need to re-register, and League members will have to scramble to keep up with additional voter education and re-registration demands.

Not only would this constitute a clear adverse impact on the League, but it is one that is distinct from that borne by Defendants Winfrey and Azzouz (the "City").  The City is focused on litigating and complying with the legal standard established or identified by the Court, and on resolving this action so the City can get back to its other business, election-related and otherwise.  By contrast, the League is focused on preventing (or at least mitigating) the threat to the franchise posed by the unreasonable standard that PILF seeks to impose on Michigan election administrators and by the proposed deregistration of Detroit voters.  Indeed, the primary purpose of the League -- which has a century of experience and expertise in voter education, registration, and proper list maintenance practices -- is to protect the voters of the City and the State.  The Michigan League is concerned about Detroit voters, *and* about voters in Grand Rapids, Ann Arbor, Flint and whatever city PILF next targets.[1]  Absent the League, any resolution (whether in

---

[1] In 2017, PILF sent letters to 32 Michigan counties alleging purported violations of the NVRA and threatening legal action. *See* PILF, *248 Counties Have More Registered Voters Than Live Adults* (Sept. 25, 2017), https://publicinterestlegal.org/blog/248-counties-registered-voters-live-adults/, https://publicinterestlegal.org/county-list-2017/, https://publicinterestlegal.org/files/Sample-2017-notice.pdf.  In 2019, it appears that PILF again sent similar letters to 29 Michigan counties. *See* PILF, *244 Counties Have More Registered Voters than Live Adults* (Aug. 29, 2019), https://publicinterestlegal.org/blog/244-counties-have-more-registered-voters-than-live-adults/ and https://publicinterestlegal.org/county-list-2019/.

the form of an injunction, judgment or settlement) may not take into account all the interests of the voters of Detroit and of the State more broadly.

The timing of this litigation makes intervention by the League particularly important. There is a national election in less than nine months.  If the City purged voters in the manner that PILF demands, eligible voters are likely to be removed, and the League will be burdened by having to educate Detroit voters about the purge, and quickly attempt to identify and re-register improperly deregistered, eligible voters before the election in November.  This would be no small task, exacerbated by the fact that most properly registered voters likely would not know that they had been unlawfully deregistered.[2]  As a result, the League may not have the time to fully remedy the removal of eligible voters from the voting rolls, either by re-registering improperly purged voters or through separate litigation.

Courts have regularly granted such motions to intervene in cases like the instant dispute. In *Bellitto* v. *Snipes*, a non-party workers' union moved to intervene in an action brought against a county election official alleging that the county failed to ensure that its list maintenance activities complied with the NVRA.  No. 16-CV-61474-BLOOM/Valle, 2016 WL 5118568, at *2–3 (S.D. Fla. Sept. 21, 2016).  The court found that the union had a significant interest in the case, which was not adequately represented by the defendant election official, where the union alleged that some of its members may be unintentionally purged from the voter rolls as a result of the litigation.  *Id*.  Thus, the court granted the union's motion to intervene.  Courts likewise have granted motions to intervene by the League of Women Voters -- as well as by Plaintiff -- in very similar matters.  In *Kobach* v. *U.S. Election Assistance Comm'n*, the court granted the

---

[2] Neither the NVRA nor Michigan law requires notice to a voter before the cancellation of their registration on the basis of their purported death. *See* 52 U.S.C. § 20507(a)(4); Mich. Comp. Laws § 168.510.

League of Women Voters of the United States, League of Women Voters of Arizona, and League of Women Voters of Kansas leave to intervene permissively in a case brought by then-Kansas Secretary of State Kris Kobach challenging certain aspects of the national mail voter registration application form under the NVRA.  No. 13-CV-4095-EFM-DJW, 2013 WL 6511874, at *4–5 (D. Kan. Dec. 12, 2013).  Conversely, another court granted motions to intervene by PILF and Kobach as defendants in *League of Women Voters of the United States* v. *Newby*, an action brought by the League of Women Voters of the United States against defendants Brian D. Newby, in his capacity as the Acting Executive Director & Chief Operating Officer of the U.S. Election Assistance Commission, and the U.S. Election Assistance Commission, challenging modifications to the instructions on the national mail voter registration form.  *League of Women Voters of the United States* v. *Newby*, 195 F. Supp. 3d 80, 88 (D.D.C. 2016).

The League has been working in Detroit and across Michigan for more than 100 years to advance and enrich participatory democracy -- precisely the work PILF would set back if it succeeds.  The League should be permitted to intervene.

## BACKGROUND

The League of Women Voters of Michigan is a nonpartisan community-based statewide organization formed in April 1919 after Michigan voters granted women suffrage in November 1918.  The League is affiliated with the League of Women Voters of the United States, which was founded in 1920.  The League is dedicated to encouraging its members and the people of Michigan to exercise their right to vote as protected by the federal Constitution, Michigan Constitution, and federal and state law.  The mission of the League is to empower voters and defend democracy.  The League promotes political responsibility through informed and active participation in government and through action on selected governmental issues.  The League

impacts public policies, promotes citizen education, and makes democracy work by, among other things, removing unnecessary barriers to full participation in the electoral process.  In the past, the League has brought legal action against Michigan officials to achieve these goals.  *See, e.g.*, *League of Women Voters of Michigan* v. *Benson*, 2:17-CV-14148, 2017 WL 11113484 (E.D. Mich. Dec. 22, 2017) (complaint challenging the state's redistricting process).

Currently, the Michigan statewide League has 27 local leagues and over 2,400 members. The League has members in almost every county in the State, including Democrats, Republicans and independents.  Of particular relevance to this motion, the League leads voter registration drives, distributes information about the electoral process, promotes electoral laws and practices that encourage voter participation, partners with local organizations to host events on voting rights and other public policy issues, and conducts election protection on election days, among other activities.

Like the Michigan League, the League of Women Voters of Detroit is a nonpartisan political organization that encourages informed and active participation in government.  The Detroit League influences public policy through education and advocacy, as well as though voter services including voter registration drives and election protection.  The Detroit League holds voter registration drives at schools, naturalization ceremonies, and various local events throughout the greater Detroit metropolitan area.  It also provides voter information to ensure that voters know their rights and to remove barriers to electoral participation.

As a strong proponent of registration reform and a major sponsor of voter assistance and registration efforts, the League has a unique interest in protecting against the deregistration of eligible voters that would follow if Plaintiff succeeds in this action.  If the City is compelled to execute the voter purges demanded by Plaintiff, the burden of engaging in voter education and

re-registration to remedy the disenfranchisement that would follow would be borne largely by

the League.  Moreover, if PILF were to succeed in requiring Detroit to adopt an unreasonable

and aggressive purge based on unsubstantiated data -- including as a result of any settlement the

City may reach to avoid protracted litigation with PILF -- the state League will bear the burden

of preventing PILF from wreaking havoc on election administration statewide.  The City also

may face political and/or financial pressures to resolve this case short of an adjudication of the

merits that may not fully consider, address, and remedy all the harms to the voters of Detroit and

Michigan more broadly -- in particular, the harms associated with the threat of

disenfranchisement as well as the burdens of re-registration for those citizens improperly swept

up in the purges Plaintiff seeks.  The City, therefore, may not adequately represent those voters

that the League works hard to register, assist, and engage in the electoral system.  The League

accordingly requests that its motion to intervene be granted as of right under Rule 24(a) or

alternatively, by permission under Rule 24(b).

## ARGUMENT

## I.   THE COURT SHOULD GRANT INTERVENTION AS OF RIGHT UNDER RULE 24(A)

A non-party has a right to intervene in an action where:  (1) the application to intervene is

timely; (2) the applicant has a substantial legal interest in the subject matter of the pending

litigation; (3) the applicant's ability to protect that interest in the absence of intervention may be

impaired by disposition of the action; and (4) the parties already before the court do not

adequately represent that interest.  Fed. R. Civ. P. 24(a)(2); *Mich. State AFL-CIO* v. *Miller*, 103

F.3d 1240, 1245 (6th Cir. 1997).  The League satisfies each of these elements.

A.     **The Intervening Parties' Motion is Timely**

The League's motion is timely.  Courts "evaluate timeliness in the context of all relevant circumstances and consider the following five factors" in determining whether a motion to intervene is timely:  (1) the stage of the litigation; (2) the purpose for which intervention is sought; (3) the length of time preceding the motion during which the potential intervenors knew or should have known of their interest in the litigation; (4) the prejudice to the original parties due to the potential intervenors' failure to promptly move to intervene; and (5) the existence of unique circumstances militating against or in favor of intervention.  *Kirsch* v. *Dean*, 733 Fed. App'x 268, 274–75 (6th Cir. 2018) (citing *Jansen* v. *City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)).

Applying these factors, the League's motion is timely.  First, this case is in the nascent stage of litigation.  The initial complaint was filed on December 10, 2019 and the City filed an answer less than three weeks ago, on January 20, 2020.  No scheduling order has been set, no discovery has been undertaken, no dispositive motions have been filed, and no trial date has been set.  Given the early stage of the proceedings, this factor weighs in favor of finding the proposed intervention timely.  *See City of St. Louis* v. *Velsicol Chem. Corp.*, 708 F. Supp. 2d 632, 666 (E.D. Mich. 2010) (finding motion to intervene timely where "case has progressed very little down the 'litigation continuum'" and where "discovery has not yet taken place"); *United States* v. *Marsten Apartments, Inc.*, 175 F.R.D. 265, 267–68 (E.D. Mich. 1997) (finding first factor weighed in favor of finding proposed intervention timely where suit was still in the pretrial stage and limited discovery had been taken).

Second, the purpose for which intervention is sought is to ensure that eligible registered voters either remain registered or have an opportunity to register without fear of removal for insubstantial reasons.  Intervention will ensure that voters who seek to remain on the rolls and

exercise their constitutional right to vote in upcoming elections will be fully represented.  Thus, the League seeks to intervene for the proper purpose of protecting the voting rights of Detroit and Michigan citizens.  *Compare Marsten Apartments*, 175 F.R.D. at 268 (second factor weighed in favor of finding of timeliness where the purpose "sought here [is] to assert rights under the Fair Housing Act, a broad, remedial statute entitled to a generous construction"), *with Konica Mintolta Bus. Solutions U.S.A., Inc.* v. *Lowery Corp.*, No. 15-11254, 2018 WL 2225360, at *3 (E.D. Mich. Apr. 23, 2018) (finding second factor weighed against timeliness where movant sought intervention for the limited purpose of allowing it to gather evidence in discovery but not actively participate in the litigation).  The national 2020 elections will be held in less than nine months.  If a resolution of this matter -- whether by court order or through a negotiated settlement -- results in an aggressive purge and a heightened standard for voter list maintenance beyond reasonableness, the League may not have sufficient time to remedy the issue, either through additional efforts to educate and re-register voters or through litigation.

Third, the League expeditiously acted to intervene in this recently commenced action. The action was commenced less than two months ago and the League moved to intervene only three weeks after the answer was filed on January 20, 2020.  *See Pride* v. *Allstate Ins. Co.*, No. 10-13988, 2011 WL 692299, at *3 (E.D. Mich. Feb. 18, 2011) (finding motion to intervene timely where motion was filed two months after commencement of the action).  During those three weeks, the League sought the advice of counsel, reviewed the pleadings, and determined that the League's interests may not be adequately represented in this action.

Fourth, there is no prejudice to the original parties because the League promptly moved to intervene within two months of the complaint being filed and within three weeks of the City filing its answer.  *See Hill* v. *Travelers Cas. & Sur. Co.* No. 14-12840, 2015 WL 3440871, at *4

9

(E.D. Mich. May 28, 2015) (finding no prejudice to the original parties where intervenors moved with "relative promptness").  Intervention by the League will not alter the timeline upon which this case will be adjudicated.

Finally, there are no unique circumstances that militate against intervention at this early stage of the proceeding.

In sum, the League's motion is timely because the answer was only recently filed and discovery has not yet commenced in this action.  Motions to intervene are regularly granted at much later stages of litigation.  *See, e.g.*, *Hill*, 2015 WL 3440871, at *4 (finding motion to intervene timely with only sixty days remaining to complete discovery); *Pride*, 2011 WL 692299, at *3 (finding motion to intervene after commencement of discovery was timely).

### B.      The League Has a Substantial Legal Interest in the Case

The Sixth Circuit "subscribe[s] to a 'rather expansive notion of the interest sufficient to invoke intervention of right.'"  *Grutter* v. *Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999) (quoting *Michigan State AFL-CIO*, 103 F.3d at 1245).  As a result, the Sixth Circuit "has acknowledged that 'interest' is to be construed liberally."  *Bradley* v. *Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987).  For instance, a proposed intervenor is not required to have a "specific legal or equitable interest" in the litigation.  *Michigan State AFL-CIO*, 103 F.3d at 1245.  A potential intervenor also need not have the same type of standing that is necessary to initiate a lawsuit.  *Purnell* v. *City of Akron*, 925 F.2d 941, 948 (6th Cir. 1991).  Given the Sixth Circuit's expansive understanding of an interest sufficient to invoke intervention as of right, "close cases should be resolved in favor of recognizing an interest."  *Michigan State AFL-CIO*, 103 F.3d at 1247.

This lawsuit implicates the League's substantial legal interest in ensuring that every registered, eligible voter in Detroit remains registered and able to exercise his or her constitutional right to vote.  "It is beyond cavil that voting is of the most fundamental

significance under our constitutional structure." *Burdick* v. *Takushi*, 504 U.S. 428, 433 (1992) (citation omitted).  The Supreme Court has long recognized that all aspects of election laws affect, at least to some degree, an individual's right to vote and right to associate for political purposes.  *Anderson* v. *Celebrezze*, 460 U.S. 780, 788 (1983).

As a result, courts have recognized an organization's interest in protecting access to the ballot, and have specifically granted intervention in cases where parties seek to protect their interests in ensuring that eligible, registered voters remain registered and are not wrongfully purged from voter rolls.  *See Bellitto*, 2016 WL 5118568, at *2–3 (granting union's motion to intervene where union asserted that "its interests and the interests of its members would be threatened by the court-ordered 'voter list maintenance' sought by Plaintiffs . . . which [the union] maintains could itself violate the NVRA").

The decision in *Kobach* v. *U.S. Election Commission* is particularly instructive.  *See* 2013 WL 6511874.  There, the court allowed the intervention of the League of Women Voters of the United States, League of Women Voters of Arizona, and League of Women Voters of Kansas in a case involving the question of whether defendants could be compelled to add a proof-of-citizenship requirement to Kansas and Arizona-specific voter registration application materials. The court recognized that the proposed intervenors' "experience, views, and expertise," particularly as to how state voter registration requirements impact voter registration efforts, would "assist the Court in reaching its decision" and thus justify intervention.  *Id.* at *5.  So too, here.

The League's core mission is to register eligible persons to vote, to assist registered voters in freely casting a ballot, and to strengthen our democracy by ensuring that all eligible persons have the opportunity to register and *remain* registered to vote.  In particular, the League

works to register and educate voters in communities with persistent registration and participation gaps, including people of color and low-income Americans.

Of acute concern to the League, the purge Plaintiff seeks may result in the deregistration of *eligible* voters.  Any outcome of this litigation that would result in eligible voters' registrations being put at risk by unnecessary, unreasonable, and unlawful purges of Detroit's voting rolls would directly harm the interests of the League and its longstanding efforts to promote and maintain lawful voter registrations, particularly in historically disenfranchised communities.

## C.  The League's Ability to Protect Its Interests Will Be Impaired Absent Intervention

The Michigan and Detroit Leagues are "so situated that disposing of th[is] action may as a practical matter impair or impede th[eir] ability to protect [their] interest" in protecting the rights of eligible Detroit voters.  Fed. R. Civ. P. 24(a)(2).  "To satisfy this element of the intervention test, a would-be intervenor need show only that impairment of its substantial legal interest is *possible* if intervention is denied."  *Michigan State AFL-CIO*, 103 F.3d at 1247 (emphasis added).  "This burden is minimal."  *Id*; *see also Coal. to Defend Affirmative Action, Integration & Immigration Rights & Fight for Equal. by any Means Necessary* v. *Granholm*, 240 F.R.D. 368, 375 (E.D. Mich. 2006) (noting that proof of the third element "is not an onerous task").

The League faces the possibility of being seriously impaired in its voter education, assistance, and registration efforts if Plaintiff succeeds in requiring Detroit to further purge its voter rolls.  First, the League's voter education and registration efforts in Detroit would be set back, requiring additional and substantial efforts by the League to overcome any new obstacles to registering, remaining registered, and voting.  As discussed above, the League's mission is to

promote voter registration and participation, and it commits substantial time and resources to encouraging civic participation and registering voters.  *See* Mot. to Intervene at 2, *Newby*, No. 1:16-cv-00236, 2016 WL 11572484 (D.D.C. Feb. 20, 2016), ECF No. 24 ("As a nonprofit organization with special interest in the administration of election laws, the Foundation should be permitted to intervene just as several of the current Plaintiffs [League of Women Voters] were granted permissive intervention as defendants in similar prior litigation."); Minute Order, *Newby*, No. 1:16-cv-00236 (Feb. 22, 2016) (granting ECF No. 24, Motion to Intervene by Public Interest Legal Foundation).

If PILF forces Detroit to engage in unreasonable voter list maintenance practices and an aggressive purge, the League would have to spend time and resources to ensure that any erroneously purged voters learn of their removal and re-register in time for the upcoming election.  Faced with a new risk of improper purges based on unsubstantiated data, the League would have to educate voters and encourage them to regularly check their registration statuses. The League would have to devote additional resources to election protection to mitigate any resulting confusion at the polls.  And the League would have to combat the disenchantment among Michigan voters (including League members) that is sure to arise if non-governmental third-party groups -- including ones that have a history of slandering voters as ineligible -- are granted the power to name the voters that election administrators must remove from the rolls.[3]

---

[3]  In 2018, the League of United Latin American Citizens and individual plaintiffs sued PILF and J. Christian Adams (PILF's President and General Counsel) because two PILF reports publicly and falsely named certain individuals as non-citizens and accused them of voting when ineligible. *League of United Latin Am. Citizens* v. *Pub. Interest Legal Found.*, No. 1:18-CV-00423, 2018 WL 3848404 (E.D. Va. Aug. 13, 2018), Compl. ECF No. 26.  Discovery in that case revealed internal communications in which a PILF spokesperson acknowledged that some of the people the group named might actually be citizens, but that PILF "still ha[d] the opportunity to convert pushback into official confusion to justify our call for top-down overhaul," because "[t]he fog of war favors the aggressor here."  *See LULAC* v. *PILF* Deposition Exhibit JJ,

These new activities would force the League to divert scarce resources, in a presidential election year, from its ordinary and planned activities.

In addition to the League's general mission of protecting voter rights and access, the League has a specific interest in preventing against the deregistration of eligible voters in minority and other traditionally disenfranchised communities, which it has dedicated serious effort to empowering to vote. *See Kobach*, 2013 WL 6511874, at *4 (granting the League the right to intervene and explaining that "[t]he Court finds that all Applicants have clearly shown their interests in either increasing participation in the democratic process, or protecting voting rights, or both, particularly amongst minority and underprivileged communities"). Detroit's population is 78.6% Black and 7.6% Latino; by contrast, Michigan's population is 14.1 % Black and 4.2% Latino.[4] Minority and other traditionally disenfranchised communities are especially vulnerable to more aggressive purging because many are first-time voters, change residences more frequently due to financial instability, and face other barriers to registration. The time and expense in re-registering would be more burdensome for individuals who had struggled with this initial hurdle. The League has gone to great lengths to educate people in these communities about voting and registration. Based on its extensive experience in this area, the League reasonably believes that those who already face significant barriers to voting, if removed from voting lists due to this action, may well be deterred from voting altogether, undermining years of work done by the League to promote civic participation.

---

https://protectdemocracy.org/resource-library/document/lulac-v-publicinterest-legal-foundation-exhibit-jj-2/. PILF ultimately settled the case and, as part of that settlement, issued a written apology to plaintiffs. *See LULAC* v. *Public Interest Legal Foundation*, https://protectdemocracy.org/project/lulac-v-public-interest-legal-foundation/ (last visited Feb. 5, 2020).
[4] United States Census, *QuickFacts: Detroit City, Michigan; Michigan*, https://www.census.gov/quickfacts/fact/table/detroitcitymichigan,MI/PST045219 (last visited Feb. 5, 2020).

Second, the League stands to suffer considerable harm from the precedential effect of this case if Plaintiff is successful.  The League seeks to argue, as Detroit does, that Plaintiff has inadequately alleged that Detroit is failing to "make[] a reasonable effort" to remove ineligible voters' names.  52 U.S.C. § 20507(a)(4).  This would harm both Detroit and the League directly through the impact on the administration of elections in Detroit.  But the League would also suffer a separate harm if Plaintiff were emboldened by this action to pursue a similar strategy of challenging list maintenance programs on a statewide basis.  These subsequent lawsuits would threaten the League's interest in protecting against disenfranchisement and increase the burden on the Michigan League to (1) educate and re-register voters, and (2) oppose these lawsuits everywhere, not just in Detroit.  Indeed, Plaintiff has already filed similar lawsuits targeting cities and counties elsewhere in the country, and has publicized its intention to continue bringing these cases.  *See, e.g.*, *244 Counties Have More Registered Voters than Live Adults*, PUBLIC INTEREST LEGAL FOUNDATION (Aug. 19, 2019), https://publicinterestlegal.org/ blog/244-counties-have-more-registered-voters-than-live-adults/ ("Registrants in highlighted jurisdictions [that PILF identified as reporting bloated voter rolls] can expect a variety of research techniques and legal actions from the Foundation in preparation for the 2020 Election . . . .  PILF has been involved in bringing nine separate lawsuits in the last two years to enforce list maintenance provisions of the NVRA, including in Texas, Mississippi, Florida, North Carolina, Virginia and Pennsylvania.").  Of particular concern to the League:  PILF has included 29 counties in Michigan on its list of "flagged" jurisdictions that it intends to target in advance of the 2020 election.  *Id.*

### D.  The City Inadequately Represents the Intervening Parties' Interest

Absent the League's intervention, the interests of voters may not be fully advanced and protected in either an adjudicated or consensual resolution of the case.  Although there is overlap

in the questions of law and fact that the City and the League seek to litigate in this case, the City may not fully and zealously represent all the interests of the League and the voters it represents. A proposed intervenor "is not required to show that the representation will in fact be inadequate." *Michigan State AFL-CIO*, 103 F.3d at 1247. It is sufficient to show that the original parties' "representation *might* be inadequate." *Grutter*, 188 F.3d at 400. Thus, the Sixth Circuit has stated that proposed intervenors' "burden in showing inadequacy *is minimal*." *Id*. at 401 (emphasis added).

The League does not question the City's sincere intent to protect the rights of Detroit voters. But the City also has other interests, and it does not have the voter-focused mission that the League can bring to bear. By contrast, the League's *only* goal in joining this action is to protect Detroit and Michigan voters and to ensure the integrity of election administration statewide. And the League's knowledge of Michigan elections practice could benefit the Court and all parties to the case. As discussed above, separate and apart from the shared interest in the administration of Detroit elections, the City does not share the League's interest in ensuring that (1) there is no impact on the League's past and future voter education and registration efforts, and (2) Plaintiff does not establish precedent for other cases against government officials throughout Michigan (and the country) founded on baseless and unsubstantiated allegations of violations of the NVRA. *See Kobach*, 2013 WL 6511874, at *4 ("[T]he Court finds that the existing government Defendants have a duty to represent the public interest, which may diverge from the private interest of Applicants. As such, the existing Defendants may not adequately represent Applicants' specific interests."). Both of these effects would impact the League, not the City, by burdening it not only with additional work and voter registration efforts, but also with potentially serious encumbrances to carrying out its mission.

16

## II.   IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION UNDER RULE 24(B)

Alternatively, the Court should permit the League to intervene under the permissive intervention provisions of Rule 24(b).  When ruling on motions to intervene, courts regularly elect to grant permissive intervention without regard to whether an applicant is entitled to intervention as of right.  *See, e.g.*, *League of Women Voters of Michigan* v. *Johnson*, 902 F.3d 572, 577 (6th Cir. 2018) (explaining that proposed intervenors "claim they are entitled to both intervention of right and permissive intervention," but "[b]ecause the[y] are entitled to permissive intervention, we address only those arguments"); *see also League of Women Voters of Ohio* v. *Blackwell*, 235 F.R.D. 388, 389 n.1 (N.D. Ohio 2005) ("Because I conclude that permissive joinder is appropriate, no discussion of Rule 24(a) joinder as of right is necessary.").  A motion for permissive intervention "is directed to the sound discretion of the district judge." *Meyer Goldberg, Inc. of Lorain* v. *Goldberg*, 717 F.2d 290, 294 (6th Cir. 1983).  To permissively intervene, "a proposed intervenor must establish that the motion for intervention is timely and alleges at least one common question of law or fact."  *United States* v. *Michigan*, 424 F.3d 438, 445 (6th Cir. 2005).  Once established, the district court will consider the possible undue delay and prejudice to the original parties and any other relevant factors.  *Id*.

For the reasons above, this motion is timely and the League raises common issues of law and fact.  The City argues that Plaintiff has failed to state actionable claims; the League, likewise, seeks to intervene to argue that Plaintiff has no claim based on its allegations that Detroit's registration list has not been adequately maintained.  The Sixth Circuit has permitted intervention in other similar cases where both the party and the applicant raised claims and defenses relating to voters' election administration rights.  *See, e.g.*, *Blackwell*, 235 F.R.D. at 389–90 (granting motion to intervene permissively where applicant was a resident who raised

issues she had experienced with an electronic voting machine -- seeking to protect voters' interest in these machines functioning properly -- which the court explained was a different issue with election administration than that raised by the League).  The *Blackwell* court found no issue with the fact that both the League and the applicant sought to represent the same Ohio voters' interests in defendants' administration of the 2004 election.

The Sixth Circuit decision in *League of Women Voters of Michigan* v. *Johnson* shows that not only do common claims and defenses weigh in favor of granting permissive intervention, but differences in the applicant's interest compared with that of the original parties can weigh in favor of intervention as well.  902 F.3d at 579–80 (discussing differences in the applicants' interest, and that their motion raised additional defenses beyond those in the answer, demonstrating that applicants' interests were not adequately protected, and concluding that this weighed in favor of intervention).

PILF has sought and been granted permissive intervention in similar circumstances.  In *League of Women Voters of the United States* v. *Newby*, a case in which the League of Women Voters as plaintiff challenged the U.S. Election Assistance Commission's decision to allow states to require proof of citizenship requirements on the federal voter registration form, PILF argued that it should be granted permissive intervention in light of common questions of law and fact that its claims and defenses shared with the main action.  In fact, in *Newby*, PILF (referred to there as the "Foundation") relied on a prior case (*Kobach*) in which the League had been permitted to intervene:  "As a nonprofit organization with special interest in the administration of election laws, the Foundation should be permitted to intervene just as several of the current Plaintiffs [including the League of Women Voters of the United States and of Kansas] were granted permissive intervention as defendants in similar prior litigation."  Mot. to Intervene,

2016 WL 11572484 (citing *Kobach*, 2013 WL 6511874). The League should be permitted to intervene here for substantially the same reasons as intervention was permitted in *Kobach* and *Newby*. *Id.*

**CONCLUSION**

For the foregoing reasons, the League of Women Voters of Michigan and League of Women Voters of Detroit respectfully request that the Court grant their motion to intervene pursuant to Federal Rule of Civil Procedure 24(a) or, in the alternative, Rule 24(b).

Dated:  February 10, 2020

Respectfully submitted,

BRENNAN CENTER FOR JUSTICE AT NYU SCHOOL OF LAW

Myrna Pérez (N.Y. Bar No. 4874095)*
Eliza Sweren-Becker (N.Y. Bar No. 5424403)*
120 Broadway, Suite 1750
New York, NY 10271
Telephone: 646.292.8310
Facsimile:  212.463.7308
myrna.perez@nyu.edu
eliza.sweren-becker@nyu.edu

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

/s/ Robert A. Atkins
Robert A. Atkins (N.Y. Bar No. 2210771)
William B. Michael (N.Y. Bar No. 4296356)
Joshua D. Kaye (N.Y. Bar No. 4577219)
Sabrina A. Baum (N.Y. Bar No. 5496237)*
Zack G. Goldberg (N.Y. Bar No. 5579644)*
Adrienne Y. Lee (N.Y. Bar. No. 5643283)*
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:  212.373.3000

Facsimile:    212.757.3990
ratkins@paulweiss.com
wmichael@paulweiss.com
jkaye@paulweiss.com
sbaum@paulweiss.com
zgoldberg@paulweiss.com
alee@paulweiss.com


BUTZEL LONG

/s/ David F. DuMouchel
David F. DuMouchel (P25658)
George B. Donnini (P66793)
41000 Woodward Avenue
Stoneridge West
Bloomfield Hills, MI  48304
Telephone:     (313) 225-7004
dumouchd@butzel.com
donnini@butzel.com

*Attorneys for Proposed
Intervenor-Defendants*

*\*Application for admission forthcoming*

## <u>CERTIFICATE OF SERVICE</u>

I, Robert A. Atkins, certify that on February 10, 2020, I caused a true and correct copy of the foregoing document to be filed and served electronically via the ECF system.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

/s/ Robert A. Atkins_____
Robert A. Atkins (N.Y. Bar No. 2210771)
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:  212.373.3183
Facsimile:  212.492.0183
ratkins@paulweiss.com

*Counsel for Proposed*
*Intervenor-Defendants*

21