UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PUBLIC INTEREST LEGAL
FOUNDATION, INC.

           Plaintiff,                         Case Number 19-13638

v.                                                     Honorable David M. Lawson

JANICE M. WINFREY and GEORGE
AZZOUZ,

           Defendants.
_____/

## OPINION AND ORDER GRANTING MOTION BY LEAGUE OF WOMEN VOTERS OF DETROIT AND MICHIGAN TO INTERVENE AS PARTIES DEFENDANTS

On December 10, 2019, plaintiff Public Interest Legal Foundation, Inc., a not-for-profit entity incorporated in Indiana, filed the present lawsuit against the City of Detroit's Clerk and Director of Elections seeking to compel the City to undertake more aggressive measures to purge its voter rolls of allegedly ineligible voters. Sixty days later, the League of Women Voters Detroit and the League of Women Voters Michigan moved to intervene as defendants. Their stated interest is to guard against the improper removal of qualified voters from the registry. The plaintiff opposes the motion and the present defendants do not. The motion is fully briefed and will be decided without oral argument. Because the motion to intervene was filed timely, and the proposed intervenors sufficiently have identified a common issue of fact or law implicating their interests that could be affected by the litigation, the motion will be granted and the moving parties may intervene as defendants on a permissive basis.

I.

The plaintiff bases its lawsuit on the National Voter Registration Act (NVRA). It asks for injunctive relief from the Court compelling the City of Detroit's election officials to take stronger

measures to purge the City's voter rolls of allegedly "ineligible" voters. The plaintiff alleges that the City is not performing its obligation under the NVRA to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of (A) the death of the registrant; or (B) a change in the residence of the registrant." 52 U.S.C. § 20507(a)(4).

The plaintiff alleges that the City's failure of performance is demonstrated by (1) purported discrepancies between the number of voting age adults living in the City according to census estimates and the allegedly larger number of registered voters recorded on the rolls, (2) isolated discrepancies in some registrations identified by the plaintiff's own audit of voting records, such as a voter whose date of birth is recorded as 1824, and (3) purportedly duplicative registrations of two or three persons identified by the plaintiff as having the same names, which the plaintiff believes indicates the registration of some voters more than once per individual. The plaintiff also alleges that it sent the City a report identifying 2,503 registrations of persons whose names the plaintiff had matched with Social Security Administration and other records indicating that persons with those names were deceased.

In its answer, the City, responding to the particular allegations of the complaint, contends that (1) the number of registrations cited by the plaintiff is deceptively overstated because the total figure plaintiff stated included many thousands of voters that already were listed as challenged or inactive, (2) the actual number of registered voters as of January 17, 2020 was more than 30,000 lower than the outdated figures that the plaintiff alleged in its complaint, (3) the census estimates on which the plaintiff relies are widely recognized as undercounting the actual voting age population of the City, (4) apparent anomalous registration details such as birth dates in the early 1800s are obviously mere scrivener's errors, (5) the plaintiff's assertions of "duplicate

registrations" simply ignore the fact that different persons who are properly registered could have the same names, (6) more than 94% of the names identified by the plaintiff as duplicates or deceased voters already had been removed by routine list maintenance measures before the plaintiff filed its complaint, and the plaintiff had been so informed by the City before the suit was commenced, and (7) even taking the plaintiff's figures at face value, the allegedly duplicative or deceased registrants represented less than one-half of one percent of the total number of registrations.

The League of Women Voters associations of Detroit and Michigan filed a motion to intervene as defendants on February 10, 2020. The Court held a scheduling conference two days later, at which counsel for the parties and the proposed intervenors were present. The City defendants answered the complaint and filed a motion for judgment on the pleadings on February 28, 2020. Under the scheduling order issued by the Court, discovery is set to close on August 31, 2020, and a bench trial is scheduled to begin on May 10, 2021.

II.

The local and state chapters of the League of Women Voters argue that they should be allowed to intervene as defendants to represent the interests of their organizations and their members (1) to assure that no overzealous measures going beyond the reasonable list maintenance program required by the statute are employed, which could increase the risk of properly registered voters being removed by mistake, and (2) to avoid the need to expend the resources of the association identifying and aiding incorrectly removed legitimate voters in unnecessary efforts to have their registrations restored, in case they are purged by mistake.

The plaintiff counters that the City defendants are fully capable of representing the League's purported interest in retaining eligible voters on the rolls, that "there is no legitimate

plausible interest" in keeping ineligible registrants active on the voter rolls, that intervention somehow will cause "disruption, delay and cost," and that the motion is "untimely" because it was filed after the parties convened a Rule 26(f) conference (although before any scheduling conference was held by the Court).

Federal Rule of Civil Procedure 24 provides two procedural avenues for an entity that was not named as a party to a lawsuit to seek to insert itself into the proceedings. Those are designated under the rule as "intervention of right," Fed. R. Civ. P. 24(a), and "permissive intervention," Fed. R. Civ. P. 24(b).

"To intervene as a matter of right in a lawsuit under Federal Rule of Civil Procedure 24(a), a proposed party must establish that: '(1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect that interest may be impaired in the absence of intervention; and (4) the parties already before the court may not adequately represent the proposed intervenor's interest.'" *Kirsch v. Dean*, 733 F. App'x 268, 274 (6th Cir. 2018).

Federal Rule of Civil Procedure 24(b)(1), on the other hand, allows for "permissive" intervention under more relaxed conditions: "'On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact.'" *League of Women Voters of Michigan v. Johnson*, 902 F.3d 572, 577 (6th Cir. 2018). In deciding whether to allow a party to intervene [on a permissive basis], 'the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" *Ibid.* (quoting Fed. R. Civ. P. 24(b)(3)). "'So long as the motion for intervention is timely and there is at least one common question of law or fact, the balancing of undue delay, prejudice

to the original parties, and any other relevant factors is reviewed for an abuse of discretion.'" *Ibid.* (quoting *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1248 (6th Cir. 1997)).

Timeliness of the motion is evaluated "in the context of all relevant circumstances [by consideration of] the following five factors: '(1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.'" *Kirsch*, 733 F. App'x 274-75 (quoting *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)).

The Leagues' request to intervene is timely, and the grounds they present plainly favor permissive intervention. The Court need not address intervention by right. *Buck v. Gordon*, --- F.3d ---, No. 19-1959, 2020 WL 2316677, at *3 (6th Cir. May 12, 2020).

First, the suit barely has progressed into the early stages of discovery, and dispositive motion deadlines and the trial date are many months away. The motion was filed during the nascent stage of the proceedings before the Court even convened a scheduling conference or issued a scheduling order. *Buck*, 2020 WL 2316677, at *4 n.4 ("[T]he Dumonts' motion was timely; they filed their motion at the very outset of the suit, before any defendant had filed an answer. (In fact, the motion to intervene was filed more than five months prior to any defendant answering the suit.)."). The plaintiff asserts that the Leagues' presence in the case will cause problems adhering to the schedule established by the Court, but the Leagues' counsel was present at the scheduling conference and expressed no concerns or objections when asked if they foresaw any problems meeting scheduled deadlines. Contrast that with cases where intervenors sought to disrupt an

established schedule by intervening late in the litigation raising unanticipated procedural or substantive issues, after the Court already had issued substantial dispositive rulings. *E.g.*, *Kirsch*, 733 F. App'x at 275 ("Although discovery had not yet started — a marker that we have previously considered relevant in assessing the timeliness of a motion to intervene — the district court had already been asked to decide dispositive motions as to several of the parties' claims and counterclaims and to determine whether a significant portion of the case ought to proceed in a different forum.").

Second, the intervenors seek to intervene for the purpose of challenging the plaintiff's claims with a view toward ensuring that no unreasonable measures are adopted that could pose an elevated risk of removal of legitimate registrations. That is a facially legitimate interest and one that is sufficiently distinct from the interests of the municipal defendants. The Sixth Circuit has recognized that the interests of election officials in voting roll maintenance are sufficiently distinct from those of elected officials and their constituents to warrant intervention by those who could be impacted by the results of the maintenance process. *League of Women Voters*, 902 F.3d at 579. The interest of the intervenors, for the purposes of permissive intervention, only needs to be "distinct" from the defendants, regardless of whether it is "substantial." *Ibid.* ("[Defendant] Johnson, [Michigan's Secretary of State,] according to the district court, seeks to 'provid[e] fair and smooth administration of elections' and 'protect[] the current apportionment plan and other governmental actions from charges of unconstitutionality.' The contours of Michigan's district maps do not affect Johnson directly — she just ensures the maps are administered fairly and accurately. In contrast, the contours of the maps affect the Congressmen directly and substantially by determining which constituents the Congressmen must court for votes and represent in the legislature."); *see also ibid.* ("[T]he [proposed intervenors] identify several interests they seek to

protect by intervening, chief among them 'the relationship between constituent and representative.' We need not decide whether these interests amount to 'substantial legal interest[s]' to entitle them to intervention of right, *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005); it is enough to say, contrary to the district court's assertion, that the Congressmen's interests differ from those of Johnson and the citizens of Michigan.").

Moreover, the question whether the measures employed by election officials qualify as a "system of file maintenance" that "makes a reasonable effort to remove registrants who are ineligible to vote" requires an exercise in statutory interpretation. When answering the question, the Court must consider both the plain text of the statute and the explicitly identified balance of interests that Congress sought to advance by the enactment. *Bellitto v. Snipes*, 935 F.3d 1192, 1200-01 (11th Cir. 2019).

When Congress passed the National Voter Registration Act of 1993, Pub. L. No. 103-31, 107 Stat. 77 (codified as amended at 52 U.S.C. §§ 20501-20511 (2012)), it made three explicit findings: "(1) the right of citizens of the United States to vote is a fundamental right; (2) it is the duty of the Federal, State, and local governments to promote the exercise of that right; and (3) discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities." 52 U.S.C. § 20501(a). Those findings led to these stated goals: "to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office"; and "to make it possible for Federal, State, and local governments to implement [the Act] in a manner that enhances the participation of eligible citizens as voters in elections for Federal office." 52 U.S.C.§ 20501(b)(1)-(2). The

point of the Act, therefore, was to *increase*, not decrease, the electoral participation of our citizenry.

"But because Congress also recognized that easing registration barriers could threaten the integrity of our elections, the legislation set forth another set of goals: 'to protect the integrity of the electoral process' and 'to ensure that accurate and current voter registration rolls are maintained.'" *Bellitto*, 935 F.3d at 1198 (quoting 52 U.S.C. § 20501(b)(3)-(4)). "In short, the law permits the states to remove registrants only under defined circumstances — at the request of the voter, by reason of criminal conviction or mental incapacity as provided in state law, or because of death or change of residence; but it also requires the states to conduct a general program that makes a reasonable effort to remove the names of voters who have become ineligible on account of death or change of address." *Id.* at 1199.

The plaintiff's presentation fails to recognize the balancing of divided and competing interests that the Court will be called on to consider when weighing whether the defendants ought to be compelled to modify their list maintenance process. It is apparent from their pleadings that the sole goal of the plaintiff is to compel the City to *remove* from the rolls voters whom it claims are ineligible. Nowhere has it pleaded that it seeks any assurances that voters are retained on or restored to the rolls, which is the expressed mission of the intervenors. The mission and interest of the intervenors is explicitly to pursue the second of the expressly recognized interests that motivated Congress to enact reforms to the voter registration process in recent decades. *Bellitto*, 935 F.3d at 1198 ("[The] twin objectives [of the NVRA] — easing barriers to registration and voting, while at the same time protecting electoral integrity and the maintenance of accurate voter rolls — naturally create some tension. Undoubtedly, a maximum effort at purging voter lists could minimize the number of ineligible voters, but those same efforts might also remove eligible voters.

Conversely, preventing the states from removing registrants altogether would ensure that no eligible voters are removed, but, at the same time, maximize the risks associated with inaccurate voter rolls. Thus, Congress crafted a statute that sought to balance these competing interests.").

The plaintiff simply ignores the second — equally weighty — express legislative purpose of the Act. But a fulsome consideration of both competing interests, vigorously advocated by appropriately interested parties concerned with each side of the balancing test, unquestionably will be helpful to the Court when it is called upon to strike the required balance and decide whether the defendants' program of list maintenance is "reasonable" within the meaning of the statute. The Sixth Circuit has recognized that where the resolution of a legal dispute can end with the adoption of only one of several competing positions, the interests of advocates for all of those various positions are sufficiently diverse to mitigate in favor of intervention. *Buck*, 2020 WL 2316677, at *4 ("St. Vincent maintains that the First and Fourteenth Amendments guarantee it the right to refrain from certifying same-sex couples for adoption. The Dumonts' position is the inverse; they claim that the State may not allow St. Vincent to turn away same-sex couples without violating prospective foster or adoptive parents' First and Fourteenth Amendment rights. There can be only one winner in this clash of constitutional guarantees, so the Dumonts have presented a common question of law that can be resolved by the district court.").

Third, the plaintiff has not identified any basis for a finding that the Leagues improperly delayed filing their motion or that it was not filed promptly as soon as counsel for the Leagues became aware of the litigation that might impact their interests.

Fourth, the plaintiff's contention that the Leagues' participation will "drive up the costs of the litigation" is unsupported by any facts, and the plaintiff has not cited any authority for the proposition that any incremental increase in costs incurred by fully addressing legitimate third-

party interests is a proper basis for denying intervention. The plaintiff has not identified any other substantial way in which it will be prejudiced by the participation of the Leagues. Moreover, even if some prejudice may result, any complication of the case must be weighed against the value of resolving all competing legal positions within a single decisive lawsuit setting out the prevailing law for all parties to follow. That consideration weighs particularly heavily in favor of allowing intervention where, as here, the same plaintiff has initiated or is in the process of initiating multiple lawsuits in various courts around the state raising essentially identical claims attempting to coerce municipalities to purge their voter rolls. *Buck*, 2020 WL 2316677, at *5 ("The core dispute between the Dumonts and St. Vincent has spawned at least three actions in federal district court, two appeals to our court, and one motion for certification of a question to the Michigan Supreme Court. No case has yet reached a final judgment on the merits. Absent intervention, these numbers are likely to increase. Strong interest in judicial economy and desire to avoid multiplicity of litigation wherever and whenever possible therefore supports permissive intervention.").

Fifth, the plaintiff has not identified any "unusual circumstances" that warrant denial of the request to intervene at this stage of the case.

Finally, the plaintiff's formalistic trailing objection that the motion should be denied because no proposed pleading was attached has been rejected by the Sixth Circuit as a valid basis for denying an otherwise proper motion to intervene. *League of Women Voters*, 902 F.3d at 580 ("[W]e decline to affirm on the independent ground that the Congressmen failed to satisfy Rule 24(c) because they did not attach to their motion 'a pleading that sets out the claim or defense for which intervention is sought.' We 'take[] a lenient approach to the requirements of Rule 24(c),' and Plaintiffs identify no 'prejudice [that] would result from granting the motion to intervene

despite the failure to attach a pleading.'" (quoting *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 314 (6th Cir. 2005))).

### III.

The League of Women Voters Detroit and the League of Women Voters Michigan have stated a valid basis for permissive intervention.

Accordingly, it is **ORDERED** that the motion to intervene (ECF No. 21) is **GRANTED**.

It is further **ORDERED** that the intervening defendants may file an answer to the complaint **on or before June 17, 2020**. If they wish to take a position on the pending motion for judgment on the pleadings, they must file their brief by **June 5, 2020**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated: May 28, 2020